2020R01314/SCF/ES

RECEIVED
SEP 29 2023
AT 8:00 ___1:40 P.M
CLERK, U.S. DISTRICT COURT - DNJ

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Susan D. Wigenton |
| v. | : | Crim. No. 23-779 (SDW) |
| ROBERT WESTBROOK | : | 15 U.S.C. §§ 78j(b) and 78ff |
| | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1030(a)(2)(C) |
| | : | 18 U.S.C. § 2 |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

### COUNT ONE
### (Securities Fraud)

### Overview of the Scheme

1.   From at least in or around January 2019 through at least in or around May 2020, defendant ROBERT WESTBROOK ("WESTBROOK") executed a hack to-trade scheme through which he generated millions of dollars in profits. On at least five occasions, WESTBROOK gained unauthorized access to Office365 email accounts belonging to corporate executives employed by certain companies to obtain non public information, including information about impending earnings announcements, based upon which WESTBROOK purchased securities that he sold in short order after the material information became public.

## Relevant Entities, Individuals, And Terms

2.  At all times relevant to this Indictment:

    a.  WESTBROOK was a citizen and resident of the United Kingdom.

    b.  The New York Stock Exchange (the "NYSE") and the NASDAQ Stock Market (the "NASDAQ") were national securities exchanges in the United States. The NYSE and the NASDAQ maintained computer servers located within the District of New Jersey.

    c.  Company-1 was a corporation headquartered in Orlando, Florida, whose securities were publicly traded on the NYSE.

    d.  Company-2 was a corporation headquartered in San Mateo, California, whose securities were publicly traded on the NYSE.

    e.  Company-3 was a corporation headquartered in El Dorado, Arkansas, whose securities were publicly traded on the NYSE.

    f.  Company-4 was a corporation headquartered in San Jose, California, whose securities were publicly traded on the NASDAQ.

    g.  Company-5 was a corporation headquartered in Los Angeles, California, whose securities were publicly traded on the NYSE.

    h.  The U.S. Securities and Exchange Commission (the "SEC") was an independent agency of the executive branch of the United States government that was responsible for enforcing federal securities laws and promulgating regulations thereunder.

i.  Under United States securities laws, publicly traded companies must regularly disclose their financial performance to the SEC and, through the SEC, to the general public. For example, publicly traded companies are generally required to file quarterly financial reports after each of the first three quarters of the fiscal year on SEC Form 10-Q, and to file an annual report of their financial performance, including audited financial statements, after the end of the final quarter of the fiscal year, on SEC Form 10-K. In addition, publicly traded companies are required to file periodic "current reports" on SEC Form 8-K disclosing events of significance to shareholders.

j.  A "put" referred to an option contract giving the purchaser of that contract the right to sell a certain number of shares in a security at a specific price within a specified time. Put options allowed an investor to profit from a decrease in a security's market price.

k.  A "call" referred to an option contract giving the purchaser of that contract the right to purchase a certain number of shares in a security at a specific price within a specified time. Call options allowed an investor to profit from an increase in a security's market price.

### The Scheme to Defraud

3. On various dates between on or about January 26, 2019 and on or about May 7, 2020, in the District of New Jersey and elsewhere, the defendant,

### ROBERT WESTBROOK,

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of Rule 10b-5 (17 C.F.R. § 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission and did: (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engage in acts, practices, and a course of business which would and did operate as a fraud and deceit, in connection with the purchase and sale of securities, specifically, the securities of Company-1, Company-2, Company-3, Company-4, and Company-5.

### Object of the Scheme

4. The object of the scheme was for WESTBROOK to profit by obtaining material non-public information about publicly traded companies, which he obtained by unlawfully gaining access to Office365 email accounts of various corporate executives and using that non-public information to execute profitable securities transactions on the NYSE and NASDAQ exchanges.

## Manner and Means of the Scheme

5. It was part of the scheme that:

   a. On or about January 26, 2019, WESTBROOK gained unauthorized access to the Office365 email account of Company-1's Director of Finance and Accounting ("Individual-1") through an unauthorized password reset. During the intrusion, an auto-forwarding rule was implemented, which was designed to automatically forward content from Individual-1's compromised email account to an email account controlled by WESTBROOK. At the time of the intrusion, the compromised email account of Individual-1 contained non-public information about Company-1's quarterly earnings, which indicated that Company-1's sales were down.

   b. Beginning on or about January 28, 2019 – two days after the intrusion and two days before Company-1 announced its earnings – and continuing through on or about January 29, 2019, WESTBROOK purchased multiple Company-1 put options.

   c. Before the market opened on or about January 30, 2019, Company-1 announced its quarterly earnings, which reflected negative financial results. The market value of Company-1's stock declined over the next 24 hours. WESTBROOK sold his put options on or about January 30, 2019 following the earnings announcement, resulting in profits of approximately $322,781.

   d. On or about February 22, 2019, one day after Company-2 issued a press release disclosing when it would announce its quarterly

financial results, WESTBROOK gained unauthorized access to the Office365 account of Company-2's CFO ("Individual-2") through an unauthorized password reset. During the intrusion, an auto-forwarding rule was implemented, which was designed to automatically forward content from Individual-2's compromised email account to an email account controlled by WESTBROOK. At the time of the intrusion, the compromised email account of Individual-2 contained non-public information about Company-2's quarterly financial results, which indicated that Company-2 had exceeded its revenue and profit ranges.

      e.    On or about March 6, 2019, hours before Company-2 announced its quarterly earnings, WESTBROOK purchased Company-2 equities and multiple call options. After the market closed, Company-2 publicly reported positive earnings, and the market value of its stock rose over the next 24 hours. Shortly after the market opened the following day, on or about March 7, 2019, WESTBROOK sold his entire Company-2 position, resulting in profits of approximately $236,492.

      f.    WESTBROOK continued trading Company-2 securities until 2020, around the time when Individual-2 – whose email account continued to auto-forward certain content to an email account controlled by WESTBROOK – ceased employment with Company-2. For example, on or about February 18, 2020, in advance of Company-2's March 4, 2020 earnings announcement, WESTBROOK purchased multiple Company-2 put options. Following Company-2's earnings announcement, the market value of Company-2's stock

declined, and WESTBROOK closed his position, earning approximately $1.27 million.

   g. On or about October 23, 2019, WESTBROOK gained unauthorized access to the Office365 account of Company-3's Associate Controller ("Individual-3") through an unauthorized password reset. During the intrusion, an auto-forwarding rule was implemented, which was designed to automatically forward content from Individual-3's compromised email account to an email account controlled by WESTBROOK. At the time of the intrusion, drafts of Company-3's quarterly earnings report had been circulated via email to Individual-3, which indicated positive financial results.

   h. Beginning two days later, on or about October 25, 2019, and continuing through on or about October 30, 2019 – the date of Company-3's quarterly earnings announcement – WESTBROOK purchased multiple Company-3 call options. After the market closed on or about October 30, 2019, Company-3 reported positive earnings, and the market value of Company-3's stock rose over the next 24 hours. Shortly after the market opened the following day, on or about October 31, 2019, WESTBROOK sold all of his Company-3 call options, earning profits of approximately $1.3 million.

   i. On or about February 3, 2020, WESTBROOK gained unauthorized access to the Office365 account of Company-4's Director of Marketing Communications ("Individual-4") through an unauthorized password reset. During the intrusion, an auto-forwarding rule was implemented, which was designed to automatically forward content from Individual-4's

compromised email account to an email account controlled by WESTBROOK. At the time of the intrusion, the compromised email account of Individual-4 contained non-public information about Company-4's quarterly earnings, indicating record high revenue.

j.   On or about February 3, 2020, approximately five hours after the intrusion and one day before Company-4's earnings announcement, WESTBROOK purchased multiple Company-4 call options. The following morning, on or about February 4, 2020, Company-4 reported positive earnings and the market value of its stock rose. After the earnings announcement, WESTBROOK began selling his Company-4 options on or about February 4, 2020, and liquidated his position over the next two days, generating profits of approximately $217,535.

k.   Sometime before February 15, 2019, WESTBROOK gained unauthorized access to the Office365 account of Company-5's Chief Accounting Officer ("Individual-5"). During the intrusion, an auto-forwarding rule was implemented, which was designed to automatically forward content from Individual-5's compromised email account to an email account controlled by WESTBROOK.

l.   WESTBROOK traded profitably in Company-5 securities on multiple occasions beginning in May 2019. For example, on or about May 4, 2020 – two days before Company-5's May 6, 2020 earnings announcement – WESTBROOK purchased multiple Company-5 call options and equities. After the earnings announcement, the market value of Company-5's stock increased,

and WESTBROOK sold his Company-5 call options and equities, earning profits of approximately $293,598.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## COUNT TWO
## (Wire Fraud)

6. The allegations in Paragraphs 1, 2, 4, and 5 of this Indictment are re-alleged here.

7. From on or about January 26, 2019 through on or about May 7, 2020, in the District of New Jersey and elsewhere, the defendant,

**ROBERT WESTBROOK**,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, and sounds, namely, the following electronic wire transmission:

| Date | Description |
| --- | --- |
| February 3, 2020 | Company-4 securities transaction processed through a NASDAQ server located in the District of New Jersey. |

In violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 2.

## COUNTS THREE THROUGH SEVEN
### (Unauthorized Access of a Computer)

8. The allegations in Paragraphs 1, 2, 4, and 5 of this Indictment are re-alleged here.

9. From in or around January 2019 through in or around February 2020, within the extraterritorial jurisdiction of the United States, the defendant,

**ROBERT WESTBROOK,**

who will be first brought to the District of New Jersey within the meaning of 18 U.S.C. § 3238, intentionally accessed a computer without authorization and thereby obtained information from a protected computer, and the offense was committed for the purpose of private financial gain, as set forth in the individual counts below:

| Count | Approximate Date | Description |
|---|---|---|
| THREE | January 26, 2019 | Accessed Individual-1's Office365 email account without authorization and obtained material non-public information about the quarterly earnings of Company-1. |
| FOUR | February 22, 2019 | Accessed Individual-2's Office365 email account without authorization and obtained material non-public information about the quarterly earnings of Company-2. |
| FIVE | October 23, 2019 | Accessed Individual-3's Office365 account without authorization and obtained material non-public information about the quarterly earnings of Company-3. |
| SIX | February 3, 2020 | Accessed Individual-4's Office365 account without authorization and obtained material non-public information about the quarterly earnings of Company-4. |

| | | |
|---|---|---|
| SEVEN | February 15, 2019 | Accessed Individual-5's Office365 account without authorization and obtained material non-public information about the quarterly earnings of Company-5. |

In violation of Title 18, United States Code, Sections 1030(a)(2)(c), (c)(2)(B)(i), and (c)(2)(B)(iii), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

10. As a result of committing the offenses charged in Counts One and Two of this Indictment, the defendant ROBERT WESTBROOK, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the said offenses, and all property traceable thereto.

## FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH SEVEN

11. As a result of committing the offense charged in Counts Three through Seven of this Indictment, the defendant ROBERT WESTBROOK, shall forfeit to the United States:

   a. pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1030(i), any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of the offenses charged in Counts Three through Seven of this Indictment; and

   b. pursuant to Title 18, United States Code, Section 1030(i), all right, title, and interest in any personal property that was used or intended to be used to commit or to facilitate the commission of the offenses charged in Counts Three through Seven of this Indictment.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

12. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p) (as incorporated by 28 U.S.C. § 2461(c), 18 U.S.C. § 1030(i), and 18 U.S.C. § 982(b)), to forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

A TRUE BILL

███████████████

FOREPERSON

*Philip R. Sellinger*
PHILIP R. SELLINGER
United States Attorney

**CASE NUMBER: 23- 779 (SDW)**

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**ROBERT WESTBROOK**

# INDICTMENT FOR

18 U.S.C. § 1343
15 U.S.C. §§ 78j(b) and 78ff
18 U.S.C. § 1030(a)(2)(C)
18 U.S.C. § 2

A True Bill,



Foreperson

PHILIP R. SELLINGER
*UNITED STATES ATTORNEY*
*FOR THE DISTRICT OF NEW JERSEY*

SAMANTHA C. FASANELLO
EMMA SPIRO
*ASSISTANT U.S. ATTORNEYS*
*NEWARK, NEW JERSEY*
973-297-4388